UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
402 EAST STATE STREET
TRENTON, NJ 08608

CHAMBERS OF
GARRETT E. BROWN, JR.
JUDGE

ORIGINAL TO THE CLERK OF THE COURT

July 29, 2005

David T. Shulick, Esq.
1635 Market Street
19th Floor
Philadelphia, PA 19103

Lee M. Perlman, Esq.
Law Offices of Lee Perlman
402 Park Boulevard
Suite 100
Cherry Hill, NJ 08002

Elizabeth H. Hamlin, Esq.
Garrity, Graham, Favetta, & Flinn
1 Lackawanna Plaza
Montclair, NJ 07042

RECEIVED
AUG 1 2005
AT 8:30 _____ []
WILLIAM T. WALSH
CLERK

Re:   *Farina, et al. v. Massell & Vincent P.C., et al.* 03-5381 (GEB)

**LETTER OPINION**

Dear Counsel:

This Letter Opinion resolves Plaintiffs' Counsels' pending application for attorney's fees and costs pursuant to the settlement agreement between the parties and the "Stipulation of Volunteer Dismissal With Prejudice as to Defendants Massell & Vincent, P.C. and Request for a Court Determination of Appropriate Fees and Costs Under the Fair Debt Collection Practice Act."

Plaintiffs Ricky and Carmen Farina apparently gave a Veterans Administration ("VA") mortgage to secure a note for the purchase of commercial rental real estate at 612 Church Road, Cherry Hill, New Jersey. The VA portfolio loan program is administered by Countrywide Home Loans ("Countrywide"). According to the VA, if a loan is in default and normal servicing and demand for reinstatement or some other repayment plan is unsuccessful, Countrywide then forwards

1

the matter to an attorney to terminate the contract and obtain possession of property for the Secretary of Veterans Affairs. As such, Countrywide requested that the law firm of Massell & Vincent institute foreclosure proceedings on behalf of the Secretary.

Leslie S. Vincent, Esq. wrote a letter to the Farinas dated November 22, 2002, stating that the firm represented the Secretary of the Department of Veterans Affairs and that the VA had referred the account to the office of Massell & Vincent to begin legal action against them due to the fact that they were in arrears of their payments under the installment contract for sale of the real estate. They were notified that because of their default in payment, their rights were terminated and that unless they immediately vacated the subject property, action would be taken in Superior Court to forcibly evict them and for other relief. Ms. Vincent requested surrender of the property and keys.

Five days later, on November 27, 2002, Lee M. Perlman, Esq. responded to Ms. Vincent that he represented the debtors, and that on November 1st, they had filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code. He referred to the automatic stay and enclosed a copy of their Chapter 11 Plan, the first two pages of the voluntary petition and Schedule D.

Almost seven months later, Mr. Perlman again wrote to the law firm of Massell & Vincent stating in part that:

> We are in receipt of a collection notice sent by your company . . . . We believe that it may be appropriate to file a complaint for violations of the Fair Debt Collections Act, including but not limited to, the following violations:
>
> 1. Failure to include the disclosure that you are a debt collector attempting to collect a debt and any information obtained will be used for that purpose under 15 U.S.C. § 1692(e)(11).
>
> 2. Failure to include a validation notice required by 15 U.S.C. § 1692(g).

(Letter dated June 11, 2003 from Lee M. Perlman, Esq. to Massell & Vincent ("the June 11, 2003 letter")).

On June 18, 2003, the VA responded to the June 11, 2003 letter from Mr. Perlman to Massell & Vincent, noting that "[t]he VA portfolio loan program is administered by Countrywide Home Loans in Plano, Texas. Any correspondence to a debtor in regard to his default is the responsibility of Countrywide Home Loans. If normal servicing and demand for reinstatement, or some other repayment is unsuccessful, Countrywide forwards the matter to a fee attorney to terminate the contract" and obtain possession of the property. (Letter dated June 18, 2003 from Max D. Shemtob, Regional Counsel, Department of Veterans Affairs to Lee M. Perlman, Esq.). Regional Counsel of the Department of Veterans Affairs said that they did not believe that Ms. Vincent was engaged in

debt collection practice, as she was hired to obtain possession of the property after normal debt collection activity by Countrywide had failed.

By letter of July 10, 2003, Mr. Perlman responded to the VA stating his position that Ms. Vincent was engaged in debt collection. The VA responded by letter of July 15, 2003 asserting that Ms. Vincent was employed by the United States to represent its interests and the Secretary of VA seeking to repossess the property for the VA, noting that 15 U.S.C. § 1692(a) specifically excludes employees of the Government in the definition of a debt collector. By letter of July 18, 2003, Mr. Perlman responded that the Eastern District of Pennsylvania had ruled in the case of *Piper v. Portnoff Law Associates*, 2003 WL 21146707 (E.D. Pa. 2003), that "the government employee exemption 'does not extend to those who are merely in contractual relationship with the Government.'" (Letter dated July 18, 2003 from Lee M. Perlman, Esq. to Mr. Shemtob) (citations omitted).

Thereafter, on November 13, 2003, a Complaint was filed in this Court on behalf of the Farinas against Masselli & Vincent, P.C., Leslie S. Vincent, Gerald Massell and also the VA. Plaintiffs were represented by two attorneys, David T. Shulick and Lee M. Perlman. The Complaint was styled as a Class Action Complaint and asserted at Paragraph 14:

> The class is so numerous that joinder of all members is impracticable. Thousands of persons from all over the United States have received a letter from Defendants which stated "the VA has referred your account to our office to begin legal action against you" that contains language referring to "arrears in your payments."

(Class Action Compl. ¶ 14).

The action filed on November 13, 2003 was terminated by stipulation of voluntary dismissal and the action was dismissed as settled on October 4, 2004. The stipulation provided:

> Ricky and Carmen Farina, plaintiffs herein, having reached an agreement with defendant Massell and Vincent, P.C., without any admission of liability on its part to the allegations of the Complaint, they do hereby stipulate and agree that all counts and allegations of the complaint of Ricky and Carmen Farina against Massell and Vincent, P.C. are hereby voluntarily dismissed with prejudice.
>
> The parties have been unable to agree to Attorneys' Fees and Costs and hereby request the Court to make such a determination. The parties have agreed that plaintiffs' attorneys will submit an application for attorneys' fees and costs within thirty days of the date of the filing of this stipulation of dismissal and that counsel for the defendant shall likewise be afforded thirty days within which to

        oppose or otherwise respond to said application, or at such other times as may be specified by the Court.

(Stipulation of Voluntary Dismissal at 1-2).

      Pursuant to the "Settlement Agreement and Release of All Claims," the matter was settled by the payment of $1,000 in statutory damages by Massell & Vincent, P.C. to Plaintiffs. As stated in the agreement, Plaintiffs' Counsel would apply to the Court for attorney's fees and costs. Title 15 U.S.C. Sections 1692, *et. seq.*, known as the Fair Debt Collection Practices Act ("FDCPA"), provides in part that any debt collector who fails to comply with any provision of the act is liable for the actual damages sustained by a plaintiff as a result, or in the case of an individual, "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). The Act also provides at § 1692 k(a)(3) that "in the case of any successful action to enforce the foregoing liability," the defendant shall also be liable for the "costs of the action, together with a reasonable attorney's fee as determined by the court." *Id.* § 1692k(a)(3). The present Plaintiffs have been successful to the extent of obtaining $1,000. Therefore, the Court must determine reasonable attorney's fees and costs in this case.

      Plaintiffs' Counsel initially applied for counsel fees and costs in the amount of $32,375.07, together with a further sum to be determined later for counsel fees and costs incurred in the preparation of the application for the award of attorney's fees and argument pertaining to the same. Counsel asserted that no brief was required because the motion was filed in accordance with the settlement agreement and the only dispute was one of fact, not law. Plaintiffs' Counsel's submission raised a number of issues. Although they bore the burden to establish their entitlement to fees, Counsel failed to comply with General Rule 54.2(b) of this Court requiring, *inter alia*, submission of an affidavit describing all fee arrangements. Moreover, their petition included substantial duplication and billing for items which were not properly included therein.

      On November 16, 2004, the Court posed several questions to Plaintiffs' Counsel. The Court was concerned that they had proceeded with an action against the VA, even though the VA had previously referenced them to the specific statute exclusion, and Counsel asserted that they had spent considerable time researching sovereign immunity and the FDCPA.[1] Counsel's answer was that he "made a mistake." Moreover, the Court inquired why Plaintiffs asserted in their Class Action Complaint that the attorneys in this two person law firm in Middletown, New Jersey had sent thousand of letters to persons all over the United States, especially when subsequent investigation revealed that the number of letters actually sent was sixty-one, and of those only some twenty-three (according to Ms. Hamlin's July 25, 2004 letter to Plaintiffs' Counsel) or twenty-five (according to Plaintiffs' Counsel's submission to this Court) occurred within the statutory period. When the Court inquired as to pre-filing investigation to comply with Federal Rule of Civil Procedure 11, no satisfactory answer was received. Moreover, the Court was also concerned why there was so much

---

[1] Indeed when they did produce correspondence with Plaintiffs, it appears that counsel considered the VA the primary defendant.

time spent by two attorneys which seemed to involve substantial duplication. Plaintiffs' brief dated October 18, 2004 at page six states that: "The [P]laintiffs were Mr. Perlman's clients. Mr. Perlman referred the matter to Mr. Shulick who has extensive experience in class action litigation." (Pls.' Surreply in Supp. of Mot. for Att'y Fees and Costs Pursuant to Settlement Agreement at 6). This referral did not appear to justify duplication of effort.

Therefore, before considering the matter further, the Court directed Plaintiffs' Counsel to resubmit their application removing all duplicate time as well as all time spent pursuing the uncertified class action, including preparation of a motion for class certification which was never filed, and also excluding all time spent pursuing the case as to the statutorily exempt co-defendant VA. The result was a submission dated November 29, 2004 in which Mr. Shulick asserted he had removed all time related to class certification, pursuing a claim against the VA and all duplicate entries of Mr. Perlman's time. He asserted that this had reduced his claim for time spent from $21,230 to $11,901.47. As to Mr. Perlman, Mr. Shulick said that removing all time related to class certification, naming the VA and all duplicate entries with Mr. Shulick, reduced his claim for time spent from $11,145 to $5,025.[2]

Unfortunately, even as modified and supplemented, Plaintiffs' Counsel did not comply with the Court's directive. As a result, the Court has found resolution of this application particularly difficult and time consuming. The submissions which now total several inches are somewhat confused and contradictory, and pursuant to relevant caselaw, this Court has expended considerable additional time to resolve this dispute. This Court now writes in an effort to bring finality to a controversy that has consumed an inordinate amount of time resulting in but modest gain to Plaintiffs.

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court required counsel seeking statutory fees to make a good faith effort to exclude from their requests hours that are excessive, redundant or otherwise unnecessary. The Court noted that billing judgment is an important component in fee setting and it was no less important in fee shifting cases, noting that "hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." 461 U.S. at 434. Defense counsel in their supplemental brief at page sixteen, contend that: "If the Court will simply imagine the reaction of the [P]laintiffs – the Farinas – if they were to receive an invoice for $17,000 incurred to collect their $1,000, the Court will recognize that such an amount would not be 'properly billed to the client' and therefore was 'not properly billed to these [D]efendants." (Defs.' Supplemental Br. at 16).

While Defense Counsel also recognize that it is settled law that attorney's fees may not be limited to maintain proportionality between the fees and the amount of damages awarded, they argue

---

[2] Mr. Shulick also asserted that Defendant Vincent falsely stated the class consisted of sixty-one persons as opposed to twenty-three. The Court does not find any falsity because as indicated before, letters were sent to sixty-one individuals and it was subsequently determined that only twenty-three (or twenty-five) were in the statutory period.

that the amount of fees sought however must be reduced because the Court must consider the extent to which the litigation was successful. They also assert that the action could have been settled early on for the very amount that it was ultimately settled for, and that Plaintiffs' Counsel frustrated settlement discussions by stating an inflated estimate of the amount of fees they had incurred as of that time, which turned out to be more than double the amount later asserted. Plaintiffs respond that they could not settle the case until they found out how many letters were actually sent. The Court declines to further review this dispute. We do have concern as to the good faith efforts required by Rule 11 before filing, but find it unnecessary to further review the disputed event before and after the action was settled.

Defendants assert that the amount of fees should be considerably less than $16,926.47 and they propose a total of $5,456.75, or alternatively $2,390.86. While their arguments are not without merit, we also must consider in setting reasonable attorney's fees that Congress intended private litigants to enforce this statute, and provided for reasonable compensation to counsel who undertake such lawsuits. Therefore, while we will not consider as proper any time spent pursuing the uncertified class action aspects of the Complaint or the unfiled class certification motion, or pursuing the exempt Defendant VA, or the double billing or review by one attorney of the work of another when the matter had been referred, the Court will consider as properly billed the amount of time spent pursuing the FDCPA claim as to the named Plaintiffs.

Despite the $1,000 statutory limitation on non-compensatory damages received by the Farinas, there is no question that they themselves were successful. Indeed, Counsel for the defense in their reply brief recognize that the FDCPA was intended by Congress to be enforced by private lawsuits. In order to do so, one must provide reasonable compensation to Counsel. Counsel have recognized that in determining a reasonable fee, one must look to the "lodestar", i.e., reasonable hours times reasonable hourly rate, subject to possible increase or decrease as appropriate. Plaintiffs' Counsel have provided affidavits to support the requested hourly rates. The defense has responded by deferring to the Court as to the reasonableness of these hourly rates. Despite the Defense's contention that deficiencies in the investigation of the claim before filing, both as to numerosity of the class and as to immunity of the VA as well as other conduct, would speak in lack of experience which should cause downward adjustment of the hourly rate, the Court will not do so.

In the submission of November 29, 2004, Mr. Shulick seeks compensation for 30.8 hours at $365 per hour for a total of $11,242. A number of the entries give the Court concern. For November 13, 2003, he claims 1.8 hours to prepare the Class Action Complaint. This must be reduced since class allegations predominate. The same is true of the November 13, 2003 entry to review and revise the Class Action Complaint. These two entries total five hours. We will subtract a total of 1.2 hours to delete the unsuccessful class action claims. We also note the references to conferences with Mr. Perlman on January 8, January 12, and January 30, 2004, totaling 4.4 hours, and subtract a total of 1.2 hours, allowing 3.2 hours after removing unnecessary duplication. Therefore, we will exclude a total of 2.4 hours and allow 28.4 hours, instead of 30.8 hours, multiplied by $365 per hour, which totals $10,366.00. As to the costs applied for, the Court does not consider the charges claimed for overtime typing to be appropriate costs. There was no showing why overtime typing was a necessary

cost. We will therefore exclude overtime typing, which totals $119.00, and allow costs of $540.47 instead of $659.47.

The statement submitted on behalf of Mr. Perlman, attached as Exhibit B to Mr. Shulick's submission of November 29, 2004, continues to reflect the duplication that the Court was concerned about when Counsel appeared on November 16th. The Court will allow the entry of November 3, 2003, a portion of a telephone meeting with clients to discuss the merits of the FDCPA action and to explain their role as lead plaintiff in a class action, but will reduce it from one hour to .7 hour to exclude the class action portion. The Court will also allow the charge for preparation of the retention agreement on November 4, 2003 and the research for the Complaint on statutory and case law regarding Outside Counsel's claim of immunity on November 11, 2003, although the research should have prevented the VA from being named as a defendant.

The submissions for telephone meeting with co-counsel regarding the Complaint, including the discussion relating to research conducted to date totaling 3/10 of an hour will also be allowed, as well as the one hour review of the final Complaint for factual legal accuracy on the 13th. However, it would seem that that is probably the final compensable act given the referral by one counsel to another. Beyond that, the entries of March 10 and 19, and June 22, 27, and 30, 2004 do seem to be duplicative of Mr. Shulick's work. The November 16, 2004, 2 ½ hour claim for oral argument regarding attorney's fees in connection with the FDCPA Complaint will also be disallowed. Had Counsel complied with the local rules and applicable case law, an appearance would not have been necessary.[3] Four hours at $300 an hour, equals $1200.

The Court has considered Defendants' arguments, and while an award within the lower range that they propose could also be defended as reasonable, nonetheless, given the purpose of the statute and the Court's rigorous and extended effort to excise duplicative and unnecessary time and expenses, considering the "lodestar" of reasonable hours times reasonable hourly rate and the success of the individual plaintiffs achieving the statutory recovery of $1,000, and not finding it necessary to consider whether the litigation was protracted by either Plaintiffs or Defendants and good and sufficient cause having been shown, it is hereby determined that costs and reasonable attorney's fee in this action pursuant to 15 U.S.C. Section 1692(k)(a)(3) is $10,366 for Mr. Shulick's time, $540.47 for costs and expenses, and $1200 for Mr. Perlman's time, for a total sum of $12,106.47. The Court declines to award any attorney's fees and costs incurred in the preparation of the application for award of attorney's fees for the reasons stated.

Plaintiffs' Counsel's initial proposed form of order provided that the amount awarded for attorneys' fees and costs should be "paid within 20 days to [P]laintiff's counsel by joint check made payable to the Law Offices of David T. Shulick and the Law Offices of Lee Perlman, Esq." In contrast, the proposed form of order submitted with the supplemental application filed November 29th provided that "counsel fees and costs be paid by [D]efendants within 20 days as follows:

---

[3] Indeed, had Counsel thereafter complied with the Courts request, this matter would have been considerably expedited.

7

>   (a) Check in the amount of $11,901.47 mailed to the Law Offices of David T. Shulick, Esquire and (b) Check in the amount of $5,025.00 mailed to the Law Offices of Lee Perlman, Esquire.

(Certification of David T. Shulick, Ex. D). However, the settlement agreement attached to Plaintiffs' original application provides at paragraph 3.0: "Within thirty days of a final award of the Court, payment of Attorneys' fees and costs awarded by the Court shall be made by check payable to Lee M. Perlman, Esquire, at his address of record." That settlement agreement was signed by Leslie S. Vincent, individually and for Massell & Vincent, Gerald Massell, Ricky Farina, Carmen Farina, and as to Ricky and Carmen Farina also signed by both Lee M. Perlman, Esquire and David T. Shulick, Esquire.

Therefore, pursuant to the settlement agreement, within thirty days (rather than twenty days) of the date of this Letter Opinion and Order, payment of the $12,106.47 awarded as attorney's fees and costs by this Court shall be made by check payable to Lee M. Perlman, Esquire at his address of record. Said payment will discharge Defendants of any further liability for costs and attorney's fees. Any subsequent allocation of the monies between Mr. Perlman and Mr. Shulick is a matter between them and does not concern either Defendants or the Court.

_____
GARRETT E. BROWN, JR., U.S.D.J.